UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ALLISON COLE                                          CIVIL ACTION

v.                                                    NO. 20-2248

SEAL ENTERPRISES, INC., ET AL.                        SECTION "F"

ORDER AND REASONS

Before the Court are three motions for summary judgment: one by Spectrum Gulf Coast LLC; one by Seal Enterprises, Inc.; and one by IAT Insurance Group and Humberto Anibal Martinez.  For the reasons that follow, the motions are GRANTED.

**Background**

A prospective buyer of Allison Cole's house allegedly declined to consummate the pending purchase agreement after a routine home inspection revealed a fracture in the underground plumbing system.  This lawsuit followed against the entities and the individual technician allegedly responsible for puncturing the sewer main while installing telecommunications infrastructure in the Bedico Creek Subdivision in Madisonville, Louisiana.[1]

---

[1] The summary judgment record is sparse.  To summarize the background, the Court considers some allegations from the

1

Allison Cole owns residential property at 1097 Cypress Crossing, Madisonville, Louisiana in the Bedico Creek Subdivision. In May 2019, Ms. Cole listed this property for sale and a Residential Agreement for Purchase and Sale for the purchase price of $346,000 was pending.    On May 13, 2019, during routine inspections of the property pending its sale, the drains in the interior of the house were backing up, resulting in water back-filling into the property.  The home inspector recommended a video inspection of the plumbing system.  The next day, on May 14, 2019, a video inspection of the plumbing system showed that the sewer main serving the house had been punctured, which Ms. Cole attributes to the installation of telecommunications conduit by Seal Enterprises, Inc. and Humberto Martinez on behalf of Spectrum Gulf Coast LLC.  As a result of the water damage and potential for related environmental or health issues, Ms. Cole says that the prospective buyers cancelled the contract to purchase her house.

There is record evidence concerning the relationship among the defendants.  Humberto Martinez was the technician who buried cable conduit in the Bedico Creek Subdivision near Ms. Cole's house in May 2019; it is Mr. Martinez who allegedly negligently cut into a sewer line while performing his work.

---

complaint coupled with undisputed evidence from the summary judgment record.

Charter Communications, LLC is Spectrum Gulf Coast, LLC's predecessor.  On January 29, 2018, Charter Communications Operating, LLC, on behalf of Charter Communications and its other affiliates, entered into a Master Contractor Agreement with Seal Enterprises, Inc.  Seal agreed to provide labor, services, and equipment to perform installation and construction of telecommunications and cable lines on behalf of Spectrum.  The MCA, which was subject to an initial one-year term with automatic one-year renewal periods, was in effect in May 2019.

The MCA identifies Seal Enterprises as Charter's "Contractor" and, indeed, expressly designates Seal Enterprises as an independent contractor:

> 5.  <u>Independent Contractor Status</u>.  It is the intention of the parties that Contractor [Seal Enterprises] performs the Work as an independent contractor for Charter.  Contractor, and not Charter, shall be responsible for the hiring, supervision, discipline and control of its employees, and in no event shall Contractor or its employees be considered or act as employees, agents, joint venturers, or partners of Charter. Nothing in this Agreement shall be interpreted or construed as creating or establishing the relationship of employer and employee between Charter and either Contractor or any employee or agent of Contractor.  Contractor will be solely responsible at all times for its acts and omissions or the acts and omissions of its agents, employees, and subcontractors.  Identification labels on Contractor uniforms, trucks, cards, placards, or other items used in the performance of the Work must be approved by Charter in advance.

With Charter's advance approval, and provided that each subcontractor agreed to comply with and fulfill the same

3

obligations set forth in the MCA, the MCA allowed Seal Enterprises to hire subcontractors to perform Work. Consistent with its independent contractor designation, Seal Enterprises agreed to be responsible for any loss or liability due to any of its subcontractors' non-compliance with the MCA.

Seal Enterprises hired Humberto Martinez as a 1099 independent contractor to bury cable conduit adjacent to Cole's property in the Bedico Creek Subdivision in Madisonville. Mr. Martinez is not and never has been an employee of Seal Enterprises. Mr. Martinez performed services for Seal Enterprises at an agreed upon price and payments were made by Seal Enterprises directly to Martinez. Any contract work assigned to Mr. Martinez by Seal Enterprises in 2019 would have been assigned by either Keith Seal, Cody Seal, or Michael Carmichael. A Seal Enterprises representative would have contacted Mr. Martinez or one of his employees about a work assignment. Seal Enterprises assigned to Mr. Martinez work near 1097 Cypress Crossing in the Bedico Creek Subdivision around May 12 and 13, 2019. Once Mr. Martinez completed the work, he submitted an invoice to Seal Enterprises for payment; he did so in April and May 2019 for completion of burying the cable conduit in Bedico Creek Subdivision. No Charter or Spectrum or Seal Enterprises employee was present during the work performed by Mr. Martinez.

Once the home inspector discovered the sewer line puncture and water damage, Ms. Cole apparently notified Martinez. Martinez says he and his crew returned to the site and repaired the damage at his own expense; repairs which Ms. Cole alleges in her complaint were "inadequate." Weeks later, he says, he was notified of minor damage within Cole's house allegedly from the service line issue. To address this, contractors of Cole's own choosing were retained to make the necessary repairs and Martinez paid for the work.

Nevertheless, Ms. Cole sued Charter Communications, Inc. of Louisiana, in state court, alleging negligence and seeking to recover for: cancellation of the purchase agreement for $346,000; undetermined repairs to the residence; unanticipated mortgage, interest, property tax, insurance, homeowner's association, utility and other maintenance payments occasioned by the loss of the sale of the property; damages for loss of use during repairs; emotional upset and upheaval caused by the damage and loss of use during repairs. When she amended her petition to add as defendants those she believed were responsible for installing the infrastructure that punctured the sewer main, Seal Enterprises, Inc., Humberto Anibal Martinez, and IAT Insurance Group (incorrectly identified as IAT Specialty Group Insurance Company), Mr. Martinez removed the case to this Court, invoking the Court's

diversity jurisdiction.[2]   Ms. Cole later amended her complaint, substituting Spectrum Gulf Coast, LLC for Charter Communications, Inc. of Louisiana.  Now each of the defendants seek summary relief.

I.

*A.*

Summary judgment is proper if the record discloses no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit." Id. at 248.

If the non-movant will bear the burden of proof at trial, the movant "may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting

---

[2] There is complete diversity of citizenship.  Ms. Cole is a Louisiana citizen. Mr. Martinez is a Texas citizen. Seal Enterprises, Inc. is a Mississippi citizen. Charter Communications is a citizen of both Delaware and Missouri; Spectrum Gulf Coast, LLC is a citizen of Delaware and Missouri.  IAT Insurance Group is a citizen of North Carolina.  Given the plaintiff's allegations, the notice of removal alleges that it is facially apparent that the plaintiff's alleged damages exceed the $75,000 amount in controversy requirement for diversity jurisdiction.

trial." In re La. Crawfish Producers, 852 F.3d 456, 462 (5th Cir. 2017) (citation omitted).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See Anderson, 477 U.S. at 248. Nor do "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation[.]" Brown v. City of Houston, Tex., 337 F.3d 539, 541 (5th Cir. 2003). Ultimately, to avoid summary judgment, the non-movant "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 387 (5th Cir. 2007).

In deciding whether a fact issue exists, the Court views the facts and draws all reasonable inferences in the light most favorable to the non-movant. See Midwest Feeders, Inc. v. Bank of Franklin, 886 F.3d 507, 513 (5th Cir. 2018). And the Court "resolve[s] factual controversies in favor of the nonmoving party," but "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).

*B.*

This Court's Local Rule 56.1 provides that "[e]very motion for summary judgment must be accompanied by a separate and concise statement of the material facts which the moving party contends present no genuine issue."  Local Rule 56.2 provides:

> Any opposition to a motion for summary judgment must include a separate and concise statement of the material facts which the opponent contends present a genuine issue. **All material facts in the moving party's statement will be deemed admitted, for purposes of the motion, unless controverted in the opponent's statement.**

(emphasis added).

Here, each of the defendants submitted separate statements of uncontested facts along with their motions for summary judgment. Spectrum's statement of uncontested facts contains 20 facts and cites to exhibits in the summary judgment record in support of each.  Seal Enterprises' statement of uncontested facts contains 11 facts with citations to the summary judgment record in support of each.  And, IAT's and Martinez's statement of uncontested facts contains six facts citing to the plaintiff's petition and otherwise suggesting an absence of factual evidence in the record.

In response to Spectrum's motion, the plaintiff purported to present two factual disputes: (1) whether Spectrum had the right to control Seal, and by extension, Martinez's operations and performance of the project at issue, thus creating a master-servant

relationship between Spectrum, Seal, and Martinez; and (2) whether the MCA effectively releases Spectrum from any liability or responsibility for any claims Cole may have against Spectrum for the negligent installation of the conduit.  In fact, these two items listed by the plaintiff in her statement of contested facts are issues of law.  The plaintiff offers no citation to any record evidence in support of any assertion of fact.  Nor does she attempt to controvert any fact submitted by Spectrum.  Consistent with Local Rule 56.2, the 20 facts listed by Spectrum are deemed admitted.

In response to Seal Enterprises' motion, the plaintiff submits these "contested material facts": (1) whether Humberto Martinez, though hired as a 1099 independent contractor, was truly allowed to act as an independent contractor for the task of burying cable conduit, including the cable conduit located adjacent to plaintiff's property in the Bedico Creek Subdivision in Madisonville, Louisiana (statement no. 2); (2) whether Humberto Martinez was free to use his own methods to render the specific performance for Seal Enterprises as he saw fit (statement no. 8); (3) whether Seal Enterprises exercised direction, supervision, or operational control or the right of direction, supervision, or operational control over the services to be performed by Humberto Martinez (statement no. 10); and (4) whether Seal Enterprises gave

9

explicit or implicit authorization to Humberto Martinez to conduct any actions that resulted in the broken pipe near plaintiff's property (statement no. 11).  Although the plaintiff comes closer to attempting to controvert four facts listed by Seal Enterprises, in reality, she suggests factual issues that *might* exist, had she offered up controverted facts of her own.  Failing to present any evidence or identify any evidence in the record in support of her operational control theory, she fails to identify any record evidence in support of any attempt to controvert the facts listed by Seal Enterprises.  Accordingly, the 11 facts listed by Seal Enterprises are deemed admitted under Local Rule 56.2.

Finally, and similarly, in response to IAT's and Martinez's motion, the plaintiff submits that two "facts" are contested: (1) whether plaintiff has evidence showing additional physical damages resulting from the incident which occurred on May 12, 2019 which were not repaired by defendants IAT and Martinez; and (2) plaintiff has sustained economic and personal damages as a result of the cancellation of the purchase agreement on her property and the loss of use and enjoyment of her home.  Whether the plaintiff has evidence of damages is indeed the issue presented by IAT's and Martinez's motion.  Yet in response the plaintiff, who bears the burden of proving negligence, offers none.  For the reasons explained below, this dooms her negligence claims.

II.

This litigation arises from alleged property damage due to allegedly negligently installed telecommunications infrastructure in a residential neighborhood.  The plaintiff alleges that, in building trenches or installing cable conduit near her house, the technician performing the work punctured a sewerage pipe near her house, which caused water backup, property damage, and emotional damage, as well as causing a potential buyer to back out of a purchase agreement.  Each defendant (Spectrum, Seal Enterprises, and IAT and Humberto Martinez) seeks summary judgment in their favor on the ground that there is no evidence in the summary judgment record supporting the plaintiff's vicarious liability or damages theories.  To be sure, there is little evidence in the summary judgment record.  Where, as here, the plaintiff rests on allegations alone, she cannot prove an essential element of her claim; summary judgment in the defendants' favor is warranted.

*A.*

Subject matter jurisdiction is based on diversity, so the Court applies the substantive law of the forum, Louisiana. <u>See</u>

11

Boyett v. Redland Ins. Co., 741 F.3d 604, 607 (5th Cir. 2014) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).[3]

Civil Code Article 2315, Louisiana's source of negligence liability, instructs that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315.  "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."  La. Civ. Code art. 2316.  Taking into account the conduct of each party and the circumstances of each case, courts employ a duty-risk analysis to determine whether to impose negligence liability.  Lemann v. Essen Lane Daiquiris, Inc., 2005-1095, p. 7 (La. 3/10/06); 923 So. 2d 627, 632.

To recover under the duty-risk approach, the plaintiff must prove five elements: (1) the defendants had a duty to conform their conduct to a specific standard; (2) the defendants' conduct failed to conform to the appropriate standard; (3) the defendants' substandard conduct was cause in fact of the plaintiffs' injuries; (4) the defendants' substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.  Audler v. CBC Innovis, Inc., 519 F.3d 239, 249 (5th Cir. 2008)(citation omitted).

---

[3] The Court observes that the Spectrum-Seal Enterprises MCA selects Missouri law to govern.

The duty element presents a question of law; the other elements present questions of fact. Fowler v. Roberts, 556 So. 2d 1, 4-5 (La. 1989). If the plaintiff fails to prove one of these elements, then the defendants are not liable.

Civil Code Article 2320, Louisiana's source of vicarious liability, instructs that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." La. Civ. Code art. 2320. "Responsibility only attaches, when the masters or employers ... might have prevented the act which caused the damage, and have not done it." Id.[4] "Vicarious liability rests in a deeply rooted sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities." Richard v. Hall, 847 So. 2d 131, 137-38 (La. 2004) (citations omitted) ("When considering which risks the employer must bear under vicarious liability, the proper test bears resemblance to that which limits liability for workers' compensation, because the employer should be held to anticipate and allow for risks to the public that 'arise out of and in the course of' his employment of labor.").

---

[4] For example, "an employer is liable for a tort committed by his employee if, at the time, the employee was acting within the course and scope of his employment." Baumeister v. Plunkett, 95-2270, p. 2 (La. 5/21/96); 673 So. 2d 994, 996.

To determine whether an individual is a servant or an independent contractor, the key consideration is the right to control. See Hillman v. Comm-Care, Inc., 805 So. 2d 1157, 1162 (La. 2002)(the "essence of the employer-employee relationship is the right to control"). As Louisiana defines it, a "servant" includes "anyone who performs continuous service for another and whose physical movements are subject to the control or right to control of the other as to the manner of performing the service." Ermert v. Hartford Ins. Co., 559 So. 2d 467, 476-77 (La. 1990); see also Restatement (Second) of Agency § 236 ("Conduct may be within the scope of employment, although done in part to serve the purposes of the servant[.]"). "The single, most important factor to consider in deciding whether the employer-employee relationship exists . . . is the right of the employer to control the work of the employee." Roberts v. La. Health and Human Resources Admin., 404 So.2d 1221, 1225 (La. 1981). Other factors encompassed by the right of control include "supervision, selection and engagement, payment of wages or salary, and the power to dismiss." Doe v. Parauka, 97-2434 (La. 7/8/98); 714 So.2d 701, 704.

To be sure, it is settled that "the term independent contractor connotes a freedom of action with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance

with its covenants." Hickman v. Southern Pacific Transport Co.,
262 La. 102, 117, 262 So. 2d 385, 390 (La. 1972). Unlike vicarious
liability which fairly attends an employer-employee relationship,
a principal is generally not liable for offenses committed by an
independent contractor while performing its contractual duties. To
determine whether a principal-independent contractor relationship
exists to relieve an employer from vicarious liability for its
employee's tortious acts, the case literature consults the Hickman
factors:

> (1) is there a valid contract between the parties?
>
> (2) is the work being done of an independent nature such
> that the contractor may employ non-exclusive means in
> accomplishing it?
>
> (3) does the contract call for specific piecework as a
> unit to be done according to the independent
> contractor's own methods, without being subject to the
> control and direction of the principal, except as to the
> result of the services to be rendered?
>
> (4) is there a specific price for the overall undertaking
> agreed upon?
>
> (5) is the duration of the work for a specific time or
> subject to termination or discontinuance at the will of
> either side without corresponding liability for its
> breach?

See Progressive Paloverde Ins. Co. v. Estate of Jenkins, No. 19-
12840, 2021 WL 707750, at *2-3 (E.D. La. Feb. 23, 2021)(citing
Hickman, 262 So. 2d at 389-91). Aptly named the "control test,"
the focus is on whether the right to control the manner of
performing the service exists, considering the nature of the

relationship.  <u>See</u> <u>id.</u>  Classifying a worker as an employee or
independent contractor is generally a factual question determined
on a case by case basis, and the party alleging the existence of
the employment relationship generally bears the burden of
establishing the employer-employee relationship.  <u>Id.</u> (citations
omitted).  When there is no genuine dispute regarding the facts
underlying whether a party was an employee or an independent
contractor, the Court may determine the employment status as a
matter of law.  <u>Id.</u> (citations omitted).

Absent evidence in the record indicating that Martinez's work
was subject to Spectrum's or Seal Enterprises' control or their
right to control, neither Spectrum nor Seal Enterprises can be
held liable under the plaintiff's vicarious liability theory.  And
as the duty-risk test demands, absent proof of damages, a
plaintiff's negligence claim must be dismissed.

*B.*

Two issues are presented by three motions for summary
judgment: whether the plaintiff has submitted any proof of damages
and whether the independent contractor doctrine precludes a
finding of vicarious liability.  The rules governing summary
judgment procedure are dispositive of both.

It is undisputed that Martinez performed the work of digging the trenches or burying the cable conduit in Ms. Cole's residential subdivision.   The plaintiff seeks to recover from Martinez (and his insurer) for his direct negligence.   As for Spectrum and Seal Enterprises, the plaintiff's negligence theory is premised upon vicarious liability.   That there is no evidence in the summary judgment record supporting a finding that the plaintiff suffered damages is dispositive of any negligence claim against any defendant.   Nevertheless, the Court discharges its duty to consider the plaintiff's vicarious liability theory in addition to her damages theory.   Theories and speculation are insufficient to withstand summary judgment in the defendants' favor.

> 1.   Absent any evidence supporting the plaintiff's damages, theory, summary judgment is warranted.

The Court first takes up IAT's and Mr. Martinez's motion for summary relief.   As set forth above, for a negligence claim to withstand summary judgment, the plaintiff must present evidence supporting *each* of the elements of Louisiana's duty-risk test for tort claims.   The plaintiff has offered no evidence that she suffered (unrepaired) damages caused by Mr. Martinez's negligence in digging trenches or laying cable conduit.   All she presents is her unsupported theory and allegation that she and her property were damaged, and that Martinez's repairs were unsatisfactory.

IAT and Martinez submit that Mr. Martinez and a crew of workers were installing subterranean telecommunications conduit in Ms. Cole's subdivision on May 12, 2019, that the plaintiff alleges that her property was damaged, but that the plaintiff has no evidence showing any actual damages that have not already been repaired at Martinez's own cost, and the plaintiff has no evidence showing actual compensable damages resulting from the alleged cancellation of the purchase agreement or any evidence showing actual mental anguish. In other words, IAT and Martinez submit that there is an absence of evidence on an element of the plaintiff's claim on which she bears the burden of proof. In response, the plaintiff lists as contested issues "whether Plaintiff has evidence showing additional physical damages ... which was not repaired by defendants" and "whether Plaintiff has sustained economic and personal damages [due to] the cancellation of the purchase agreement ... and loss of use and enjoyment of her home." Foremost, commonsense dictates that evidence concerning the plaintiff's damages is accessible to and knowable by the plaintiff; *whether the plaintiff has evidence concerning damages* is not a triable issue. Where there is a void in the record concerning an essential element of plaintiff's claim, summary judgment must be granted in the defendants' favor. By failing to identify specific material facts that establish a genuine issue

for  trial,  Ms.  Cole's  bare,  hypothetical  assertions  do  not
withstand summary judgment.

Considering  that  there  is  no  evidence  regarding  the
plaintiff's damages, summary judgment procedure mandates dismissal
of  Ms.  Cole's  negligence  claim.   Where  the  dispositive  issue  is
one on which the nonmoving party will bear the burden of proof at
trial,  the  moving  party  may  satisfy  its  burden  merely  by  pointing
out  that  the  evidence  in  the  record  is  insufficient  with  respect
to  an  essential  element  of  the  nonmoving  party's  claim.   See
Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).   The burden
then shifts to the plaintiff, who must submit or refer to evidence
to set out specific facts showing that a genuine issue exists for
trial.   See  id.  at  324.   The  plaintiff  may  not  rest  upon  her
pleadings; rather, she must identify specific facts that establish
a  genuine  issue  for  trial.   See  id.  at  325;  see  also  Little  v.
Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).   Ms. Cole
offers  no  evidence  (no  declaration,  no  expert  report,  nothing)  in
support  of  her  damages  theory.[5]   Speculation  and  abstractions  do

---

[5] Rather  than  indicating  in  the  record  what  documents  she  would
show  or  what  testimony  will  be  offered  to  the  jury  at  trial  to
support  her  damages  theory,  Ms.  Cole  suggests  that  it  is
"unmistakable" and "undeniable" that she was damaged by Martinez's
alleged negligence and that there is only a question as to quantum
of  damages.   But  suggesting  in  argument  by  her  counsel  that  she
"has  and  can  show  at  trial  that  her  home  suffered  water  intrusion
causing  physical  damage  to  her  property[,  etc.]"  is  not  a
substitute for record evidence.

not suffice where summary judgment procedure demands concrete evidence.

There being no evidence in the record supporting the plaintiff's damages theory, summary judgment in all defendants' favor is patently required.  However, because Spectrum and Seal Enterprises did not join IAT's and Martinez's motion and, instead, move separately for summary relief solely on the ground that there are no facts to support a finding of vicarious liability, the Court turns to consider this separate issue, which is independently dispositive of the plaintiff's claims against them.  The plaintiff offers no evidence in support of any of her allegations, rendering them mere hypothetical theories that fail to withstand summary judgment motions.

2. Absent any evidence supporting the plaintiff's vicarious liability theory, summary judgment is warranted.

Both Spectrum and Seal Enterprises (separately) seek summary judgment that neither are vicariously liable for Mr. Martinez's allegedly negligent conduct because Martinez was not a "servant" under Civil Code Article 2320, but, rather, was an independent contractor.  The Court agrees.

Looking to the Spectrum-Seal Enterprises contract, the MCA specifically provides that Seal Enterprises will act as Spectrum's independent contractor, responsible for installing Spectrum's

cable and conduit and responsible for acts or omissions of any of its subcontractors.  Absent any evidence that Spectrum retained control or the parties acted in contravention of the MCA's provisions (no such evidence is provided), or that Spectrum owed a duty to the plaintiff independent of its status as principal of the MCA between it and Seal Enterprises (let alone breached any duty), the MCA is dispositive of the plaintiff's claim against Spectrum: Spectrum as principal cannot be held liable for acts of its independent contractor, Seal Enterprises, or its subcontractors.  The plaintiff submits no evidence and appears to challenge only whether Spectrum may have had some contractual right to control Seal Enterprises and, by extension, Martinez.  No genuine triable issue is presented by plaintiff's counsel's arguments.

The same evidentiary void plaguing the plaintiff's responses to the other defendants' motion dooms her vicarious liability theory as to Spectrum and Seal Enterprises.  The MCA, which was in effect in May 2019, identifies Seal Enterprises as Spectrum's independent contractor and Seal Enterprises and Martinez submit that Martinez was hired as Seal Enterprises' independent subcontractor.  By affidavit, Spectrum submits that it engaged Seal Enterprises as an independent contractor to perform digging of trenches, laying of cable conduit, and other construction work.

Spectrum did not instruct, nor did it supervise any of the work performed by Seal Enterprises or Humberto Martinez during the work at the Bedico Creek Subdivision.  This evidence is uncontroverted.  The plaintiff identifies no factual controversy to defeat summary judgment in Spectrum's or Seal Enterprises' favor.

Seal Enterprises submits that it subcontracted with Humberto Martinez to perform the burying of cable conduit in Ms. Cole's subdivision, that Martinez was contacted about the specific work assignment and, once he completed the specific work, he submitted an invoice to Seal Enterprises for payment.  When Martinez completed his tasks in the Bedico Creek Subdivision in May 2019, there is no indication that any person from Spectrum or from Seal Enterprises managed or controlled the work he performed in burying the cable conduit.  The plaintiff appears to take issue with Seal Enterprises' reliance on responses to requests for admissions as part of its factual support for its independent contractor argument.  Yet she offers nor points to any other evidence in the record that conflict with any of the "documents" (properly submitted on a Rule 56 motion, see Fed. R. Civ. P. 56(c)) offered by Seal Enterprises.  Although the plaintiff hints that there might be facts or characteristics of the Seal Enterprises-Martinez relationship that indicate Seal Enterprises may have had some right to control, she offers none, nor indicates where any might be in

the record.  To the contrary, she suggests that Seal Enterprises and Martinez may have intended that Martinez be an independent contractor, but she urges the Court to look to the substance of their arrangement.  Without offering any evidence supporting the plaintiff's theory that Martinez was a de facto employee of Seal Enterprises.

The plaintiff correctly acknowledges that an independent contractor's freedom from control generally relieves a principal from vicarious liability.  It is the plaintiff's failure to offer or point to any evidence in the record to support her control theory that dooms her vicarious liability argument; she argues that Martinez would have been subject to various conditions littered throughout the Spectrum-Seal Enterprises MCA.  Again, it is the plaintiff's singular focus on conclusions and abstractions to the exclusion of facts in the record that doom her arguments and theories.  On summary judgment, what matters is record evidence.

Here, the undisputed portions of the record indicate the following.  According to Mr. Seal's affidavit, Seal Enterprises hired Humberto Martinez as a 1099 contractor for the specific task of burying cable conduit located adjacent to the plaintiff's property.  Mr. Martinez's work in the Bedico Creek Subdivision was accomplished for and during the specific occasion of April and May

2019 and for the limited duration of the time necessary for his performance.  Mr. Martinez submitted invoices to Seal Enterprises after completing each job; he did so after he completed burying the cable conduit in the Bedico Creek Subdivision.  Mr. Martinez was free to use his own methods to render his performance as he saw fit.  Seal Enterprises did not provide Mr. Martinez with any tools or equipment to perform the services.  Seal Enterprises exercised no direction, supervision, or operational control or the right of direction, supervision, or operational control over the services performed by Martinez.  Seal Enterprises gave no explicit or implicit authorization to Martinez to conduct any actions that resulted in the broken pipe near Ms. Cole's house.  For his part, Martinez admitted that he is a contractor who receives assignments from Seal Enterprises and that he is not and never has been an employee of Seal Enterprises.

Application of the Hickman factors to these facts -- the only evidence in the summary judgment record -- reinforces the finding that Martinez was an independent contractor.  It is undisputed that Martinez was not employed by Seal Enterprises; rather, Martinez and Seal Enterprises agreed that Martinez would bury cable conduit in the Bedico Creek Subdivision in exchange for payment of an invoice upon completion.  Along with this contractual agreement, burying cable conduit appears to be work which Mr. Martinez could

and did perform with his own equipment using his own non-exclusive means to accomplish with little if any interaction with (let alone direction or supervision by) Seal Enterprises.  Martinez merely completed the work and submitted an invoice to Seal Enterprise for payment.  Marinez maintained his own commercial general liability insurance coverage, which was provided by co-defendant, IAT Insurance Group; additional indicia that the work Martinez performed was independent in nature.  Martinez's invoices likewise suggest that he engaged in only the specific work necessary to bury cable conduit such as trenching, laying cable, and pulling cable.  And he performed these tasks without direction from Seal Enterprises and without any equipment or tools from Seal Enterprises.  There is no evidence indicating that Seal Enterprises' agreement with Martinez was terminable at will.  Finally, Martinez was paid a specific price for burying the cable conduit, and the payments were made by Seal Enterprises directly to Martinez.  Seal Enterprises never issued a payroll check because Martinez was a 1099 independent contractor.

On this record, Martinez was an independent contractor such that neither Seal Enterprises nor Spectrum can be held vicariously liable for Martinez's alleged negligence.  There is no evidence that Spectrum or Seal Enterprises retained or exercised operational control over Mr. Martinez, or that either expressly or

impliedly authorized the method Mr. Martinez chose to dig the trenches or lay the cable conduit which allegedly caused Ms. Cole's property damage.  The plaintiff does not even suggest that either Seal Enterprises or Spectrum owed an independent duty to her.[6] Absent from the summary judgment record are any facts indicating that Martinez "perform[ed] continuous service" for Seal Enterprises (let alone Spectrum) or was "subject to" Seal Enterprises' or Spectrum's "control." <u>Ermert</u>, 559 So. 2d 476. So, Martinez was neither Seal Enterprises' nor Spectrum's "servant." <u>See</u> La. Civ. Code art. 2320. Because Martinez was not Seal Enterprises' or Spectrum's "servant," -- indeed, the only evidence

---

[6] "It is well established that a principal is not liable for the activities of an independent contractor committed in the course of performing its duties under the contract." <u>Davis v. Dynamic Offshore Resources</u>, 865 F.3d 235, 236 (5th Cir. 2017)(quoting <u>Bartholomew v. CNG Producing Co.</u>, 832 F.2d 326, 329 (5th Cir. 1987)).  There are two exceptions to this general rule.  A principal is not shielded from liability if (1) the activities which it contracts out to an independent contractor are ultrahazardous; or (2) the principal "exercises operational control over those acts or expressly or impliedly authorizes an unsafe practice." <u>Bartholomew</u>, 832 F.2d at 329 (holding that there was some evidence to support the jury's finding that the principal was 30% at fault, given that the principal's company man expressly authorized an unsafe work practice, that is, failing to wash down the rig floor which eventually caused Bartholomew to slip and twist his back on the muddy rig floor).

It is undisputed that neither of the exceptions to the general rule of no-liability apply here: (1) trenching or laying cable conduit is not an ultrahazardous activity; and (2) there is no evidence indicating that that the principal (whether Spectrum or Seal Enterprises) exercised operational control over Martinez's performance.

of record indicates he acted as an independent contractor --
neither company may be vicariously liable for his alleged torts.
Summary judgment in Spectrum's and Seal Enterprises' favor is thus
patently appropriate on this independent ground.

***

Spectrum submits that it is entitled to judgment as a matter
of law dismissing the plaintiff's claims against it because it is
not at fault and has no responsibility (through tort or contract)
to Ms. Cole because Humberto Martinez, who allegedly cut into a
sewer line causing the plaintiff's alleged damages, was not a
Spectrum employee.  Similarly, Seal Enterprises submits that it
bears no responsibility for any negligence by Martinez because
Martinez was an independent contractor, not its employee.
Consistent with these submissions, Martinez and his insurer
separately submit that, even assuming the plaintiff submitted
evidence to show that Martinez's negligent trenching or conduit
work pierced the sewer main, he repaired the damage and the
plaintiff's failure to come forth with any evidence of unrepaired
damage dooms her negligence claim against him.  Plaintiff's
counsel's generic, unsubstantiated statements demonstrate a
misapprehension of summary judgment procedure.  The Court
underscores that "the nonmoving party cannot defeat summary
judgment with conclusory allegations, unsubstantiated assertions,

or only a scintilla of evidence." <u>Hathaway v. Bazany</u>, 507 F.3d 312, 319 (5th Cir. 2007).  Ms. Cole offers no concrete evidence in support of her abstract propositions and unsubstantiated assertions.  No reasonable jury could return a verdict for Cole based on her speculation or theories.

On this record -- there being no facts of record supporting the plaintiff's arguments by her counsel -- the Court agrees with the defendants that summary judgment dismissing her claims is warranted.  Accordingly, IT IS ORDERED: that all three motions for summary judgment are GRANTED, and the plaintiff's claims are dismissed with prejudice.

New Orleans, Louisiana, June 9, 2021

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE